UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Larry Johnson,

   Plaintiff,

v.               MEMORANDUM OPINION
                 AND ORDER
Schulte Hospitality Group, Inc. d/b/a     Civil No. 21-457 ADM/TNL
Sheraton St. Paul Woodbury Hotel,

   Defendant.

_____

Jordan S. Kushner, Esq., Law Office of Jordan S. Kushner, Minneapolis, MN, on behalf of Plaintiff.

John P. Loringer, Esq., Wilson Elser Moskowitz Edelman & Dicker, LLP, Milwaukee, WI, on behalf of Defendant.

_____

## I. INTRODUCTION

On January 5, 2022, the undersigned United States District Judge heard oral argument on Defendant Schulte Hospitality Group, Inc. d/b/a Sheraton St. Paul Woodbury Hotel's ("Defendant" or "Sheraton" or "Hotel") Motion for Summary Judgment [Docket No. 62]. Plaintiff Larry Johnson ("Johnson") alleges that the Sheraton's treatment of him as a hotel guest constituted racial discrimination and unfair reprisal in violation of the Minnesota Human Rights Act ("MHRA"), and discrimination and retaliation in violation of 42 U.S.C. § 1981. For the reasons stated below, Defendant's Motion is granted.

## II. BACKGROUND

Johnson is a 49-year-old Black male who lives in Canada. Loringer Aff. [Docket No. 63] Ex. G (Johnson Dep.) at 8:4-5, 12:17-18, 73:19. On June 4, 2020, Johnson checked in at the Sheraton hotel in Woodbury, Minnesota, where he had an overnight reservation. Id. at 13:21-23,

16:10-11. The Sheraton is a franchise of Marriott International Hospitality Company. Loringer Aff. Ex. F ¶ 3. Johnson frequently stayed at Marriott hotels and was a silver elite member of Marriott's BonVoy rewards program. Johnson Dep. at 13:24-15:15. This was Johnson's first time staying at the Sheraton in Woodbury. Id. at 12:25-13:12.

Johnson's hotel visit occurred during the early months of the COVID-19 pandemic. As a result of the pandemic, the Hotel had significantly reduced its staff and spending. Loringer Aff. Ex. C (Feltes Dep.) at 45:2-6. Two of the Hotel's floors were shut down to conserve costs, and housekeeping staff was on site only once or twice per week. Loringer Aff. Ex. B (Ball Dep.) at 36:16-22. The Hotel's on-site restaurant was closed, and it no longer employed maintenance staff. Id. at 16:13-25, 25:21-26:1. Daily cleaning services were discontinued for guests, and rooms were not cleaned until guests had checked out. Loringer Aff. Ex. D (Spencer Dep.) at 39:17-24. The staff person working at the front desk was often the only staff member on duty and had to use their best judgment call in responding to guest complaints. Feltes Dep. at 46:18-21, 47:6-9; Ball Dep. 82:20-85:1.

**A. Hotel Check-In**

When Johnson arrived at the Sheraton, the front doors of the Hotel were locked due to the COVID-19 pandemic and the civil unrest following George Floyd's death, which had occurred approximately a week earlier in Minneapolis. Ball Dep. at 34:2-35:9. A sign was posted on the Hotel door that stated:

> Hello,
>
> Please note that these doors are locked 24 hours a day.
>
> - If you are currently checked into the hotel, please use your key card on the key reader to the right of

> the door to gain access.
>
> - If you are checking in, please use the phone to the right of the door to contact the Front Desk.
>
> Thank you, and have a great day!
>
> Warm Regards.

Loringer Aff. Ex. E at SCHULTE000007-000008.

The Sheraton's surveillance video shows Johnson approaching the front doors to the Hotel, and then standing outside of the Hotel door. Loringer Aff. Ex. I (Ball Aff.) at Ex. A (June 4, 2020 Video Surveillance). The video surveillance does not show Johnson picking up the phone to call the front desk. Id. When Assistant General Manager Patty Ball ("Ball") saw Johnson standing outside the front doors, she approached the doors, opened them, and asked Johnson what he wanted and how she could help him. Johnson Dep. at 17:7-10, 18:18-22, 19:5-6; Ball Dep. at 40:16-21. Johnson responded "[W]ell, if you can get out of my way so I can check in, I have a reservation here." Johnson Dep. at 17:10-12; Ball Dep. at 40:22-23. Ball then walked in front of Johnson to the reception desk. Johnson Dep. 17:13-15. Johnson followed and began speaking with the desk clerk, Michael Spencer ("Spencer"), and Ball then left the reception area and went to her office. Ball Dep. 41:19-42:6; Ball Aff. Ex. A.

Johnson testified in his deposition that he believes that Ball's treatment of him was "not very welcoming" and was racially motivated, because during his ten years as a BonVoy Club member he has never had an assistant manager approach the door, stand in front of him, and ask him what he wanted. Johnson Dep. at 19:16, 22:10-23. Johnson contends that Ball's actions were "unusual" and "indicated that [he] was not welcome," because Ball did not greet him by saying "welcome to Sheraton," "how is your day," or "do you have a reservation," but instead

3

stood "in [his] face" and asked what he wanted and how she could help. Id. at 19:3-16, 20:5-8, 23:5-13. Johnson alleges that immediately after he had checked in, a Caucasian male came to the front doors, and Ball did not meet this guest at the door or ask how she could help him. Second Am. Compl. [Docket No. 47] ¶ 11; Johnson Dep. at 71:6-16.

When Johnson arrived at the reception desk, desk clerk Spencer told Johnson that he could not check in unless he proved that he was a member of the BonVoy Club. Johnson Dep. 29:8-16, 35:21-36:11.[1] A guest does not need to be a BonVoy member to check into the Hotel. Spencer Dep. at 27:12-14. Johnson then went to his car to retrieve his phone and showed Spencer the membership number from an app on his phone. Johnson Dep. at 34:1-3, 36:16-19, 43:18-25. After Johnson showed Spencer his BonVoy membership number, Spencer apologized and agreed that requiring Johnson to produce proof of membership was not necessary. Id. at 44:1-11. Spencer then checked Johnson in and gave him his room key cards. Id. at 44:16-18. Johnson contends that Spencer's actions were discriminatory because he knows that a BonVoy membership is not required to check into a Marriott hotel. Id. at 33:10-12, 34:7-22, 36:21-37:18. Johnson further alleges that Spencer's actions were racially motivated because Johnson believes that Spencer did not deem him worthy of being a BonVoy member. Id. at 33:16-22; 37:18-21.

**B. Dirty Bedding**

When Johnson went to his room, he discovered that the bed had a dirty duvet comforter and sheets. Second Am. Compl. ¶ 19; Johnson Dep. at 54:10-12. Johnson called Spencer at the

---

[1] Spencer testified that he only asked Johnson whether he had his BonVoy membership number, and did not tell him that he needed it to check in. Spencer Dep. at 35:12-36:3. For the purposes of this summary judgment motion, the Court will assume that Spencer told Johnson he could not check in without proof of his BonVoy membership.

front desk and told him that the room was not clean, the bedding was dirty, and he needed to be moved. Id. at 54:12-15. Spencer responded that he was with another customer and would call back. Id. at 54:15-16. When Spencer did not call back after 15 to 20 minutes, Johnson went downstairs to the front desk and told Spencer that his room was dirty and that he wanted to be moved. Id. at 54:16-20, 55:1-10.

The parties disagree about what happened next. Johnson Decl. [Docket No. 73] ¶ 4. Johnson testified in his deposition that Spencer told him to bring the dirty bedding to the lobby on a luggage cart so that Spencer could inspect it. Johnson Dep. at 56:5-10. Johnson brought the items to Spencer on the luggage cart, and Spencer told him that the manager would not approve a room change. Id. at 56:22-57:7. Spencer gave Johnson a clean set of bedding and told him to bring it to his room and make the bed himself. Id. 57:12-16. Johnson asked if he could speak with the assistant manager, and Spencer told him that she had left for the day and could not be disturbed but would be back in the morning. Id. at 58:19-59:1. Spencer told Johnson he would email the assistant manager about the incident. Id. at 59:1. Johnson returned to his room with the new bedding, placed all the items on the bed, and slept in a chair. Johnson Dep. 59:25-60:1. In contrast to Johnson's testimony, Spencer testified that when Johnson called the front desk and told him that the sheets were stained, Spencer apologized and stated that there was no housekeeping staff on duty to come to the room and change the sheets. Id. at 38:1-2, 40:18-24. Other clean rooms were available in the Hotel that night, and Spencer gave Johnson the option of changing rooms or coming to the lobby to get new sheets. Id. at 40:3-11, 40:24-25, 41:9-12. Johnson chose not to change rooms and instead came to the lobby with his dirty bedding and was given new bedding from Spencer. Id. at 41:1-21. Spencer then sent an email to

5

Assistant Manager Ball and to General Manager Jeffrey Feltes ("Feltes") with photos of Johnson's bedding and the message, "On the bed in 427.  No cover.  Bad stains."  Loringer Aff. Ex. H.  For the purposes of this summary judgment motion, the Court will assume that Johnson's version of the facts is true and that Spencer denied Johnson's request to change rooms.

General Manager Feltes and Assistant Manager Ball both testified in their depositions that the Hotel's procedures for responding to guest complaints about the cleanliness of a room changed during the COVID-19 pandemic.  Prior to the pandemic, housekeeping and additional staff were typically on duty and available to assist in resolving the complaint.  Feltes Dep. 46:15-17; Ball Dep. at 38:16-39:6.  Once the pandemic began, the individual working the front desk would make a judgment call about how to resolve the issue because they were often the only person on duty.  Feltes Dep. at 46:6-47:12; Ball Dep. at 83:25-85:5.  The Hotel kept clean linens stocked in the back office that the desk clerk could deliver to the room if time allowed, or the guest would sometimes bring their sheets to the lobby and pick up new ones.  Feltes Dep. at 47:14-16; Ball Dep. 47:19-48:25.

The Hotel did not have a written procedure for responding to a guest's request for a different room.  Feltes Dep. at 47:25-48:2.  Feltes testified that room changes were avoided during the pandemic because switching rooms required additional labor, and the Hotel was operating with limited housekeeping staff.  Id. at 47:25-48:23.  Ball testified that if a guest complained about a room not being clean and housekeeping was not on duty to address the issue, the guest would be offered another new room if one was available.  Ball Dep. at 38:16-39:13.

### C. Removal from Hotel Property

On the morning of June 5th, Johnson came to the lobby at approximately 9 a.m. to speak with Ball about the previous night's events. Johnson Dep. at 78:25-79:13. Ball was working alone at the front desk. Ball Dep. at 55:7-10. When Johnson began to explain what had happened, Ball told him she was aware of the situation from an email she received from Spencer, and asked how she could help Johnson. Id. at 55:20-23; Johnson Dep. 79:16-80:1. Johnson claims that he requested to be moved to a new room for the remaining hours that morning before the noon check-out time, and Ball refused his request. Johnson Dep. at 80:1-13. Johnson continued to explain to Ball that he had been mistreated the night before. Id. at 80:17-25. He also stated that he felt Ball had treated him in a discriminatory manner the day before when she approached him at the front doors and asked him what he wanted and how she could help him. Id. at 81:6-10; Ball Dep. at 56:8-13, 57:21. Johnson told Ball that he felt she had been profiling him. Ball Dep. at 56:10-13. Ball responded by stating that was not her intent and that she was sorry Johnson felt that way. Id. at 56:15-17. Johnson continued to tell Ball that she had profiled him, and Ball apologized multiple times. Id. at 57:6-58:2.

After some time, Johnson began walking toward the doors to leave, and Ball asked if he was checking out. Ball Dep. at 58:24-59:1. Johnson turned, raised his voice, and began walking toward Ball in an aggressive manner. Id. at 59:6-9, 61:4-7. The Hotel's video surveillance does not include sound, but shows Johnson's gestures becoming visually more angry and increasingly more animated as he spoke to Ball. Kushner Decl. [Docket No. 72] Ex. 1. Johnson told Ball that he did not need to check out at that time and that he was a BonVoy member. Ball Dep. at 59:11-13. He continued to request that he be moved to a new room. Johnson Dep. at 82:4-10.

7

Ball felt that Johnson's body language had become more aggressive and that the "situation was going nowhere." Ball Dep. at 59:18-20, 60:25-61:7. Ball told Johnson to leave the Hotel or she would call the police. Id. at 59:20-21, 62:6-8; Johnson Dep. at 82:11-13.

Johnson refused to leave the Hotel and began video recording Ball on his cell phone. Johnson Dep. at 82:21-25; Ball Dep. at 62:6, 62:23-63:1; Johnson Decl. Ex. A (Video Recording). Ball walked to the back office and called the police. Ball Dep. at 62:7-17. When the police arrived, Ball explained to them that she felt harassed because Johnson would not stop, and that "being a woman by myself here in the hotel I was very uncomfortable." Id. at 67:4-17. When the police arrived, Johnson was cooperative with them and left the Hotel. Id. at 66:14-67:3.

**D. Lawsuit**

Johnson's Second Amended Complaint asserts three claims: (1) racial discrimination in public accommodations in violation of the MHRA, Minn. Stat. § 363A.11, subd. 1(a); (2) unfair reprisal in violation of the MHRA, Minn. Stat. § 363A.15; and (3) discrimination and retaliation in violation of 42 U.S.C. § 1981.

Defendant moves for summary judgment, arguing that Johnson's claims of racial discrimination fail because Johnson has not offered evidence of discriminatory intent and thus cannot establish a prima facie case of discrimination. Defendant further contends that even if Johnson could establish a prima facie case, the Hotel had legitimate, nondiscriminatory reasons for its actions, and Johnson cannot reasonably establish that those reasons were pretextual. Defendant also argues that Johnson's claims of unlawful retaliation fail because he cannot show a causal connection between his protected activity and Ball's adverse action in calling the police

and having Johnson removed from the property.

### III.  DISCUSSION

**A.  Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment shall issue "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in its favor.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation omitted).

If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate.  Id.  However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment."  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir.1992).  "Instead, 'the dispute must be outcome determinative under prevailing law.'"  Id. (quoting Holloway v. Pigman, 884 F.2d 365, 366 (8th Cir.1989)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir.2011) (en banc).

B.  Analysis

### 1.  Discrimination under the Minnesota Human Rights Act (Count I)

Johnson asserts a claim for an unfair discriminatory practice under the MHRA pursuant to Minn. Stat. § 363A.11, Subd. 1(a).  This provision makes it "an unfair discriminatory practice . . . to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race . . . ." Minn. Stat. § 363A.11, Subd. 1(a).  The parties agree that the Sheraton is a place of public accommodation.

At the summary judgment stage, claims of discriminatory treatment arising under the MHRA are analyzed under the McDonnell Douglas framework, "which consists of a prima facie case, an answer, and a rebuttal."  Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 441 (Minn.1983) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).  In the public-accommodations context, the elements of a prima facie case are:  (1) the plaintiff is a member of a protected class; (2) the defendant discriminated against the plaintiff regarding the availability of its facility; and (3) the discrimination was because of the plaintiff's membership in the protected class.  Monson v. Rochester Athletic Club, 759 N.W.2d 60, 63 (Minn. Ct. App. 2009) (citing Potter v. LaSalle Sports & Health Club, 368 N.W.2d 413, 416 (Minn. Ct. App. 1985)).

There is no dispute that Johnson is a member of a protected class.  However, Defendants argue that Johnson has failed to satisfy the second and third elements of a prima facie case of discrimination because Johnson has not adduced sufficient evidence to permit a reasonable inference that Defendant acted with discriminatory intent.

Discriminatory motive may be proven by direct evidence or by circumstantial evidence that gives rise to an inference of discrimination. Young v. Builders Steel Co., 754 F.3d 573, 577 (8th Cir. 2014). Here, the parties agree the case must be established by showing discriminatory intent through circumstantial evidence.

A plaintiff may establish discriminatory motive through circumstantial evidence by showing that a similarly situated person of a different race received more favorable treatment. Lucke v. Solsvig, 912 F.3d 1084, 1087 (8th Cir. 2019). The person must be "similarly situated in all relevant respects." Id. (quoting Young, 754 F.3d at 578). An inference of discrimination can also be established if a company fails to follow its own policies. Young, 754 F.3d at 578.

Johnson argues that Defendant discriminated against him regarding the availability of its facility because the Defendant: (1) greeted him in a hostile manner; (2) required him to show proof of his BonVoy membership number to check into the Hotel; (3) refused to move him to a clean room; and (4) had him involuntarily removed from the Hotel before check-out time. Each of these allegations is analyzed below.

### a. Hostile Greeting

Johnson alleges the first act of discrimination occurred when Assistant Manager Ball greeted him in an allegedly hostile and unwelcoming manner when he arrived at the Hotel. He argues that Ball's actions in approaching him at the front door and asking what he wanted and how she could help him were consistent with discriminatory racial profiling by Ball. Johnson also alleges that a Caucasian male arrived at the front door shortly after Johnson and was allowed into the Hotel without being met at the door. Second Am. Compl. ¶ 11.

The surveillance video shows that Ball walked to the door to greet Johnson after he failed

to pick up the telephone as instructed by the sign on the door. Ball Aff. Ex. A. The video also shows that, unlike Johnson, the Caucasian male picked up the phone to the right of the doors and called the front desk when he arrived. Desk Clerk Spencer is shown on the video answering the phone, opening the doors, and waving the individual inside. Ball was no longer in the reception area, having already left for her office. Johnson and the other Hotel guest are not similarly situated because Johnson did not use the Hotel phone system when he arrived, and Ball was not at the front desk when the other guest arrived.

Even if Johnson could establish a prima facie case of discrimination, Defendant had legitimate, nondiscriminatory reasons for locking the front doors and greeting Johnson differently than the Caucasian guest. The front doors were locked due to COVID-19 and civil unrest in the area. Ball approached Johnson at the front doors because he did not follow the sign directing him to call the front desk if he was checking in. The Caucasian guest did not require assistance to enter the Hotel because he called the front desk to be let inside.

Because Defendant has offered legitimate, non-discriminatory reasons for its actions, the burden shifts back to Johnson to show that Defendant's proffered reasons are pretextual. Young, 754 F.3d at 578. Johnson speculates that the Caucasian customer may have been prompted to pick up the phone. Pl. Mem. Opp'n Summ. J. [Docket No. 71]. However, to survive summary judgment, Johnson must "provide sufficient, probative evidence which would permit a fact finder to rule in [the plaintiff's] favor as opposed to engaging in 'mere speculation.'" Mathes v. Furniture Brands Int'l, Inc., 266 F.3d 884, 888-89 (8th Cir. 2001) (quoting Kneibert v. Thomson Newspapers, Mich. Inc., 129 F.3d 444, 455 (8th Cir.1997)). Johnson has provided no probative evidence that would support an inference that Defendant's proffered reasons are pretextual and

that discrimination was the real reason for Defendant's actions.

### b. Requesting Proof of BonVoy Membership

Johnson alleges that the second act of discrimination occurred when Spencer allegedly required him to show his BonVoy membership number to check in to the Hotel. Johnson argues that it is undisputed that a BonVoy membership is not required to check in to a Mariott hotel. Johnson does not offer any evidence that a similarly situated guest was treated differently. Nor does Johnson offer evidence that would allow a reasonable factfinder to infer that discrimination is the probable explanation for Spencer's conduct.

Even if Johnson could establish a prima facie case, Defendant offered a legitimate, non-discriminatory reason for asking Johnson for his BonVoy membership number. Spencer testified in his deposition that he asked Johnson for his BonVoy membership number so that he could enter it into the computer. Spencer Dep. at 35:10-11. Spencer stated that entering a BonVoy member's credentials during the check-in process saves time and "makes it easier for the guests" by allowing multiple transactions to be completed at the same time. Id. at 36:19-37:8. Johnson has offered no evidence to suggest that these reasons are pretextual and that discrimination was the real reason that Spencer required him to show his BonVoy card when checking into the Hotel.

### c. New Room Request

Johnson alleges that the third act of discrimination occurred when he was not given a new room after discovering dirty bedding in his assigned room. Johnson offers no direct or circumstantial evidence to show that the reason he was denied a new room was because of his race.

Even if Johnson could establish a prima facie case, Defendant offered a legitimate, non-discriminatory reason for not moving Johnson to a new room. Feltes testified in his deposition that the pandemic had forced the Hotel to significantly reduce its staff and spending, and the person working at the front desk was often the only staff member on duty. With no additional staff present, the front desk person often had to make a judgment call about how to address guests' complaints about unclean bedding. Feltes and Ball both testified that there were times when guests were asked to bring their sheets to the front desk and exchange them for clean ones. Ball Dep. at 48:18-25; Feltes Dep. at 47:10-16. Feltes also testified that the Hotel tried to avoid room changes during the pandemic because switching rooms required additional labor, and the Hotel was operating with limited housekeeping staff during this time period in the pandemic.

Johnson argues that these reasons are pretextual because Ball testified that after the pandemic began, if a guest complained about the cleanliness of their room they were offered a new room if one was available. However, this testimony does not contradict Feltes' testimony that no formal policy was in place for resolving guest complaints and that the person working at the front desk used their best judgment in addressing the situation. Indeed, Ball testified that "especially during COVID when there is only one person [working at the Hotel] at a time," the Hotel employee must "come up with a solution" on their own when handling guest complaints. Ball Dep. 83:25-85:1. Ball and Feltes both testified the solution was sometimes asking the hotel guest to bring their dirty linen to the front desk in exchange for clean linen.

Johnson has not provided sufficient probative evidence to support an inference that Defendant's proffered reasons are pretextual or that Defendant failed to follow its own procedures.

### d. Removal from Hotel

Johnson alleges that the fourth act of discrimination occurred when he was involuntarily removed from the Hotel. Johnson argues that Hotel guests were not required to leave before check-out time and were normally allowed to stay a short time longer.

Assuming without deciding that Johnson could show a prima facie case of discrimination based on his removal from the Hotel, Defendants have offered a legitimate, non-discriminatory reason for Ball's actions. Ball testified in her deposition that Johnson became louder and increasingly more aggressive with her while she was working alone at the front desk, and that the situation reached a point where Ball felt harassed and uncomfortable. The Hotel's video footage confirms that Johnson's body language became more animated and aggressive. Ball Aff. Ex. A.

Johnson argues that Ball's testimony that she felt harassed was pretextual because Ball's job requires her to respond to customer complaints and because Johnson did not assault her, threaten her with violence, or do anything illegal. Johnson's arguments do not support a reasonable inference that a discriminatory reason, rather than Johnson's angry and aggressive conduct, more likely motivated Ball's actions. See ACT, Inc. v. Sylvan Learning Sys., Inc., 296 F.3d 657, 666 (8th Cir. 2002) (stating that at summary judgment, a nonmovant is "not entitled . . . to the benefit of unreasonable inferences, those that amount to nothing more than mere conjecture").

Even when all of Defendant's actions toward Johnson are viewed cumulatively, they do not give rise to an inference that Defendant's conduct was motivated by Johnson's race. Defendant has offered legitimate, non-discriminatory reasons for its actions, and Johnson has not

presented sufficient probative evidence that would allow a reasonable juror to find that Defendant's reasons are pretext for race discrimination.[2]  Accordingly, Defendant is entitled to summary judgment on Johnson's MHRA discrimination claim.

### 2. Unlawful Reprisal under the Minnesota Human Rights Act (Count II)

Johnson also asserts a claim for unfair reprisal in violation of the MHRA pursuant to Minn. Stat. § 363A.15.  This statute makes it unlawful for an employee of a place of public accommodation to "intentionally engage in any reprisal against any person because that person . . . opposed a [discriminatory] practice forbidden under [the MHRA]."  Minn. Stat. § 363A.15(1).

A reprisal claim under the MHRA is analyzed by applying the McDonnell-Douglas burden-shifting test.  Chivers v. Wal-Mart Stores, Inc., 641 F.3d 927, 932 (8th Cir. 2011).  Under

---

[2] Johnson argues that Defendant's series of conduct throughout Johnson's stay was "so at variance with expect (sic) service at a hotel, particularly a premium hotel" that discrimination is the probable explanation.  Pl. Mem. Opp'n Summ. J. at 12.  The "so-at-variance" standard was adopted by the Minnesota Supreme Court to "define[] an unfair discriminatory practice in the area of public services."  City of Minneapolis v. Richardson, 239 N.W.2d 197, 202 (Minn. 1976) (emphasis added).  Johnson does not assert a claim for discrimination in public services in violation of Minn. Stat. § 363A.12.  Rather, Johnson asserts a claim for discrimination in public accommodations in violation of Minn. Stat. § 363A.11.  Johnson cites no cases in which the "so-at-variance" standard has been applied to a claim for discrimination in public accommodations.  Even if this standard did apply, Johnson has not provided evidence that would permit a reasonable fact finder to conclude that Defendant's treatment of Johnson was so at variance with expected service at a premium hotel during the early months of the COVID-19 pandemic that discrimination is the probable explanation.

Although Johnson has provided an expert report which concludes that the Hotel's service "fell below an acceptable general standard of care for the industry," the report is highly speculative.  See, e.g., Feigenbaum Report [Docket No. 74, Attach. 1] at 19 ¶¶ 2, 4 (concluding that the Hotel provided Johnson with substandard service because, in part, "[t]he management and staff . . . were operating at low occupancy levels presumably providing them with ample opportunity to think and act accordingly") (emphasis added).  As such, the expert report is not sufficient to create a genuine issue for trial.

the McDonnell-Douglas framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation.  Id.  To establish a prima facie case of reprisal under the MHRA, a plaintiff must show:  (1) that he engaged in statutorily-protected conduct; (2) the defendant took adverse action against him; and (3) a causal connection between the two.  Id.; Hubbard, 330 N.W.2d at 444.

Johnson argues that after he complained to Ball about receiving discriminatory treatment, she retaliated against him by ordering him off the property before check-out time and calling the police to remove him from the Hotel.  Defendant does not dispute that the first element of a prima facie case of reprisal is satisfied because Johnson's complaints of alleged racial discrimination constitute protected conduct.  However, Defendant argues that Johnson cannot satisfy the third element—causation—because the reason Ball called the police was that she felt harassed and threatened by Johnson's behavior.  Johnson responds that the causation element is satisfied because Ball's adverse action of having Johnson removed from the Hotel occurred minutes after he engaged in the protected activity.

The Eighth Circuit has held that "[t]he timing of an adverse . . . action in connection with the protected activity 'can sometimes establish causation for purpose of establishing a prima facie case.'"  Green v. Franklin Nat'l Bank of Minneapolis, 459 F.3d 903, 915 (8th Cir. 2006) (quoting Sherman v. Runyon, 235 F.3d 406, 410 (8th Cir.2000)).  However, timing alone is insufficient to establish a causal connection if a plaintiff engages in intervening unprotected conduct.  Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir. 1999).  For example, in Kiel, the Eighth Circuit found that the plaintiff's angry outbursts constituted "intervening unprotected conduct [that] eroded any causal connection that was suggested by the temporal

proximity of his protected conduct and his termination." Id.  The Eighth Circuit thus affirmed the district court's grant of summary judgment to the defendant.

Similarly here, Johnson's aggressive and harassing behavior broke the causal link between his claim of racial discrimination and Ball's actions in calling the police.  Resisting this conclusion, Johnson argues that Ball's motive in calling the police is a factual issue for the jury because Johnson did not assault Ball, threaten her with physical violence, or do anything illegal.  Johnson contends that the reason Ball felt harassed was that she did not want to hear complaints about her discrimination.  Johnson's speculative arguments are not sufficient to support a reasonable inference that Ball's stated reason for calling the police was pretextual and that retaliation was the real reason for her conduct.  The evidence is undisputed that Ball, who was working alone, did not call the police until after Johnson became visibly upset, raised his voice, and began acting more aggressively.  Ball Dep. at 58:24-59:21, 59:18-60:7, 62:5-17; Ball Aff. Ex. A.

Johnson has not provided sufficient evidence to satisfy the causation element of a prima facie case for unlawful reprisal under the MHRA.  As a result, Defendant is entitled to summary judgment on this claim.

### 3. Discrimination under 42 U.S.C. §§1981 (Count III)

Johnson also asserts a claim under 42 U.S.C. § 1981, which provides that all persons shall have the equal right "to make and enforce contracts."  To prevail on a § 1981 claim for race discrimination, "a plaintiff must initially plead and ultimately prove that, but for race, [the plaintiff] would not have suffered the loss of a legally protected right."  Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 140 S. Ct. 1009, 1019 (2020).  Establishing a prima facie case

of discrimination under § 1981 requires a plaintiff to show: "(1) membership in a protected class, (2) discriminatory intent on the part of the defendant, and (3) interference by the defendant with an activity protected under the statute." Green v. Dillard's, Inc., 483 F.3d 533, 538 (8th Cir. 2007) (citing Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir.2004)).

For the reasons discussed earlier, Johnson has not adduced sufficient evidence to permit a reasonable inference that Defendant acted with discriminatory intent. As such, he cannot satisfy the second element of a discrimination claim under 42 U.S.C. § 1981.

Section 1981 also encompasses claims for retaliation. CBOCS W., Inc. v. Humphries, 533 U.S. 442, 457 (2008). To establish a claim for retaliation under § 1981, Johnson must prove: (1) that he engaged in protected activity, (2) subsequent materially adverse action was taken against him, and (3) the materially adverse action was causally linked to his protected activity. Ellis v. Houston, 742 F.3d 307, 323 (8th Cir. 2014).

Johnson's § 1981 claim for retaliation is based on Ball's calling the police and having him removed from the property. Johnson cannot satisfy the third element of a § 1981 retaliation claim because, as previously discussed, Johnson's aggressive and harassing behavior broke any causal link between his protected activity and Ball's adverse action in calling the police to remove him from the Hotel.

### IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Schulte Hospitality Group, Inc.'s Motion for Summary Judgment [Docket No. 62] is **GRANTED**; and

2.      The Second Amended Complaint [Docket No. 47] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery    
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  February 28, 2022